## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-21098-JAL

MARIA C. RODRIGUEZ,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,[1]

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

**THIS MATTER** is before the Court on Plaintiff Maria Rodriguez's Motion for Summary Judgment (ECF No. 17) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 18). Plaintiff filed a Response to Defendant's Motion for Summary Judgement (ECF No. 19), which also included a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment.[2] The undersigned has fully considered the Motions, the record, and is otherwise duly advised in the matter, and hereby recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Motion for Summary Judgment be **DENIED**.

---

[1] Plaintiff initiated this suit against then Acting Commissioner Andrew Saul. Kilolo Kijakazi replaced Andrew Saul as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded."

[2] The Honorable Joan A. Lenard, United States District Judge, referred the Motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 2).

## I.    PROCEDURAL BACKGROUND

This case involves an application for Social Security disability insurance benefits under the Social Security Act (42 U.S.C. § 401, *et seq*).  On January 10, 2019, Plaintiff applied for Social Security disability insurance benefits and supplemental security income under Title II of the Act, alleging an ongoing disability due to physical ailments, including osteoarthritis, knee cysts, Sjogren's syndrome, obstructive sleep apnea, hand pain, obesity, and chronic obstructive pulmonary disease, as well as mental conditions, including depression and anxiety. (R. 44); *see* (ECF No. 1 at 2).[3]

Plaintiff alleges the disability onset date to be November 14, 2018.  (R. 42).  Plaintiff's claim was initially denied on February 15, 2019.  Plaintiff's request for reconsideration was denied on July 1, 2019.  Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A hearing took place by telephone on May 14, 2020, before ALJ Gregory M. Wilson.  The hearing participants included the claimant; a Spanish Interpreter, Luis Torres; the claimant's attorney, Jan Elizabeth Read; and a Vocational Expert ("VE"), Ghari Shirly.  The ALJ ultimately denied Ms. Rodriguez's application for disability insurance benefits and supplemental income.  (R. 35–56, 63–92).  Plaintiff sought a review of the ALJ's decision by the Appeals Council on June 30, 2020.  The Appeals Council issued a denial on October 13, 2020; however, due to Plaintiff's outstanding requests for an extension of time, the Appeals Council allowed Plaintiff to file additional evidence.  On January 21, 2021, the Appeals Council denied Plaintiff's claims.  (R. 1–8).  Under 42 U.S.C. § 405(g), Plaintiff exhausted all forms of administrative review and filed the instant action before the Court on March 22, 2021, which is now ripe for review.

---

[3] Citations to the Certified Administrative Record (ECF No. 15) are indicated by "R" followed by the Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).  The record is divided into two files on the docket, consisting of ECF No. 15, which contains pages 1–899, and ECF No. 15-1, which contains pages 900–1797.

## II.     THE RECORD

### a.  Summary of Hearing Testimony

#### i.  Plaintiff's Testimony

Plaintiff was sixty-two years old at the time of the hearing.  (R. 73).  Plaintiff lives in a home with her sister and last worked in the billing department of a pediatric office.  (R. 74). Plaintiff testified that she submitted her retirement request on November 14, 2018, and has not done any work, full-time or part-time, because she felt very bad and was afraid of being fired.  (*Id*). Plaintiff testified that she felt a lot of pain in her back, she couldn't use her hands, and she couldn't climb stairs, leaving her to wait for the elevator.  (R. 75).

Plaintiff testified that on the day of the hearing before the ALJ, she had to take two pain pills to reduce her pain.  (R. 76).  Plaintiff testified that she experiences pain in both hands and struggles to make a fist or close the fingers of her right hand.  (R. 75).  A meniscus condition with her right knee prevents her from climbing stairs.  (*Id.*).  When she stands or walks too long, Plaintiff claims that she experiences pain that prevents her from moving.  (R. 76).  She must stop and rest after walking less than a block.  (*Id.*).  Plaintiff can stand for only fifteen to twenty minutes before having to sit down.  (*Id.*).  When asked how much standing and walking she could do in a normal workday, Plaintiff answered an hour and a half to two hours total.  (R. 77).  Plaintiff testified she could sit for twenty minutes at a time or a total of two hours in one day.  (*Id.*).  Plaintiff avers that she spends forty-five minutes at a time lying down or sitting in a recliner, which she does six times a day.  (*Id.*).

Plaintiff alleges that she has trouble lifting things and that when she carries items in her left hand, she drops them.  (R. 78).  She has trouble writing and is unable to use her fingers to type text messages on her phone.  (*Id.*).  Plaintiff further alleges that her hands get swollen most of the time she attempts to grab something.  (*Id.*).  She has back pain that extends from the neck to her

3

waist.  (R. 79).  Plaintiff noted that she also has chest pain, arm pain, and feet pain.  She bought a walker in either December 2018 or January 2019 to assist when ambulating.  (R. 80).

### ii.   Vocational Expert Testimony

At the hearing, VE Ghari Shirley, a rehabilitation counselor, determined Plaintiff's past relevant work as a billing clerk to be classified as sedentary work under the Dictionary of Occupational Titles ("DOT") as DOT code 214.362-042, with a specific vocational level ("SVP") of four.  (*Id.*).  During the hearing, the ALJ presented the VE with two hypothetical individuals with similar limitations as Plaintiff and asked if either individual could perform Plaintiff's past relevant work.  (*Id.* 87–89).  The first hypothetical individual was the same age as the claimant with the same educational background and past work experience; who retains the capability of lifting twenty pounds occasionally and ten pounds frequently, can stand six of eight hours, walk six of eight hours, and sit six of eight hours; can never climb ropes, ladders, and scaffolds; can occasionally traverse ramps and stairs; who can handle kneeling, crouching, and crawling; can avoid hazards, such as dangerous moving machinery or unprotected heights; and should avoid concentrated exposure to temperature extremes, wetness, and humidity.  (R. 88).

When asked by the ALJ if this hypothetical individual could perform any of the claimant's past relevant work, the VE answered yes.  (*Id.*).  When presented with the second hypothetical individual modified to include frequent handling and fingering with the right upper extremity as part of the work, the VE opined that this individual would not be able to perform Plaintiff's past relevant work.  (*Id.*).  The VE concluded that if an individual were unable to work an entire eight-hour workday, that individual would not be able to work a full-time job in the national economy. (R. 89).

### b.  Summary of Relevant Medical Evidence

### i.  Dr. Elaine Tozman

Plaintiff began seeing Dr. Elaine Tozman six years ago.  (R. 1796–1797).  In February 2018, Dr. Tozman noted that Plaintiff suffered from osteoarthritis of the knees.  (R. 1376).  Dr. Tozman ordered an MRI of her right knee, which uncovered (among other impressions) a full radial tear at the posterior root of the meniscus. Dr. Tozman also ordered a bone density test, which revealed level 2 osteopenia of the spine and level 2 osteopenia of the hips.  (R. 1350).  Comparing the July 2, 2018, bone density study with an earlier examination on August 11, 2014, Plaintiff's treating physician noted no greater progression of the demineralization in her bones than anticipated in the time between the two studies.  (R. 1349–1350).

At a follow-up appointment on October 2, 2018, Plaintiff reported that she did not have sufficient time to do physical therapy for her knee pain.  (R. 1164).  Plaintiff reported that she had been dropping objects from her hands and had difficulty opening doors and holding on to objects.  (*Id.*).  On February 5, 2019, Plaintiff reported weakness and pain in both hands and knees, specifically the pain in front of the left knee and pain associated with ambulation.  (R. 1253).

At a follow-up appointment on May 20, 2019, Dr. Tozman reported increased neuropathy primarily in Plaintiff's right lower extremities, increased swelling of the left knee, right arm neuropathy with increased weakness throughout all fingers, and numbness spanning the right elbow to the fingers of the hand.  (R. 1228).  On August 20, 2019, Dr. Tozman reported that Plaintiff had right arm pain and, due to neuropathy, poor hand function. (R. 1198).  On December 19, 2019, Dr. Tozman reported Plaintiff's pain in her right arm and back of her right leg. (R. 1163).  Dr. Tozman also noted bilateral pain and swelling of Plaintiff's feet, as well as back pain and neuropathy with poor hand function and weakness of the bilateral hands.  (*Id.*).

### i.  Dr. Maury Hurst

Records indicate that Dr. Maury Hurst was Plaintiff's primary care physician and treated her for twenty-four years.  *See* (R. 1123–1128).  Plaintiff visited Dr. Hurst on September 23, 2019,

for a follow-up appointment regarding reported body pain.  Dr. Hurst noted that Plaintiff complained about back pain, joint pain, dizziness, leg pain, arm pain, depression, hypertension, memory dysfunction, Sjogren syndrome, and fibromyalgia.  (R. 1054).  Dr. Hurst examined Plaintiff, and his treatment notes reported that she suffered from arthralgias. (R. 1056). Dr. Hurst further reported that Plaintiff's gait and stance were normal; sensation normal; motor function normal; and peripheral nerves normal.  (*Id.*).  On February 21, 2020, Dr. Hurst noted Plaintiff's back pain, joint pain, cough, depression, hypertension, fibromyalgia, and generalized osteoarthritis.  (R. 1050).

In addition to regular appointments with Plaintiff, Dr. Hurst also completed a Residual Functional Capacity Questionnaire ("RFC Form"), also known as a Medical Source Statement ("MSS"), on September 22, 2019—just one day before Plaintiff's scheduled follow-up appointment.  (R. 1034).  In the questionnaire, Dr. Hurst noted that Plaintiff was diagnosed with hypertension, fibromyalgia, Sjogren's syndrome, and depression.  (*Id.*).  Dr. Hurst reported Plaintiff's prognosis as guarded and her symptoms to include pain, fatigue, and weakness, all of which Dr. Hurst classified as severe.  (*Id.*).  He opined that Plaintiff could sit for twenty minutes at one time for a total of two hours, stand for fifteen minutes at one time, and walk less than one (1) block.  (*Id.*).  Dr. Hurst opined that Plaintiff would need to sit in a recliner or lie down for two hours in an 8-hour workday and occasionally lift her legs during the workday.  (*Id.*).  He also opined that Plaintiff could stand and work for one hour or less with a cane or other assistive device. Plaintiff would need to walk every twenty minutes for fifteen minutes each time.  (*Id.*).  In addition to scheduled breaks, Plaintiff would need to take a ten-minute break every thirty to forty minutes during an 8-hour working day.  (*Id.*).  Dr. Hurst opined that Plaintiff could occasionally lift, carry, push, and pull ten pounds; rarely reach, grasp, twist, turn, and finger with both hands.  (R. 1035).  She cannot bend, stoop, balance, or climb stairs.  Her impairments would cause her to have more

than four bad days per month, and she would be more than 15% off task each day due to the symptoms and side effects, which would interfere with her attention and concentration.  (*Id.*)

On May 20, 2020, Dr. Tozman also completed an RFC Form.  (R. 1796).  Dr. Tozman's opinions on Plaintiff's RFC were nearly identical to those of Dr. Hurst.  Dr. Tozman opined that Plaintiff could sit for thirty minutes and walk every thirty minutes for five minutes each workday and that Plaintiff needs to elevate her legs during a workday frequently. Additionally, she can occasionally grasp, twist, turn, and finger with both hands.  (*Id*).

### ii.  State Agency

The record also contains two medical assessments completed by two state agency review physicians: Dr. Warrren Feldman and Dr. Jolita Burns.  However, neither state agency physicians met or examined Plaintiff in person.

On February 6, 2019, Dr. Warren Feldman completed a Disability Determination Explanation. (R. 94).  Dr. Feldman concluded that Plaintiff's impairments include dysfunction in major joints, Sjogren's syndrome, osteoarthritis, and allied disorders, essential hypertension, and other disorders of the gastrointestinal system.  (R. 98).  Considering Plaintiff's medical reports, Dr. Feldman determined that Plaintiff could occasionally carry twenty (20) pounds, frequently lift and/or carry ten (10) pounds, and stand and/or walk (with breaks) for a total of about six (6) hours in an 8-hour workday.  (*Id.*)  Dr. Feldman also opined that Plaintiff could sit for a total of six (6) hours in an 8-hour workday and push and/or pull with no limits, other than lift/carry constraints. (*Id.*).  Regarding postural limitations, Dr. Feldman opined that Plaintiff could climb ramps/stairs occasionally; never climb ladders, ropes, and scaffolds; balance frequently; stoop with no limits; kneel occasionally; crouch occasionally; and crawl occasionally.  (R. 100).  Dr. Feldman concluded that Plaintiff has the RFC to perform past relevant work as a billing clerk, per DOT Code 214.482-010, and that Plaintiff was not disabled.  (R. 102–03).

On June 25, 2019, Dr. Jolita Burns completed a Disability Determination Explanation reconsideration.  (R. 105).  Plaintiff reported that in the time between Dr. Feldman's Disability Determination Explanation and Dr. Burns' reconsideration, things began falling from her hand more frequently.  (R. 106).  Despite the supplementation of updated medical records, Dr. Burns still found Dr. Feldman's list of medically determinable impairments to be accurate.  (R. 112).  Dr. Burns opined that Plaintiff could occasionally lift twenty (20) pounds, frequently lift and/or carry ten (10) pounds, and stand and/or walk (with normal breaks) for a total of six (6) hours in an 8-hour workday.  (R. 114).  Dr. Feldman also opined that Plaintiff could sit for a total of six (6) hours in an 8-hour workday and push and/or pull with no limits, other than lift/carry constraints.  (*Id.*).  Like Dr. Feldman's DDE, Dr. Burns concluded that Plaintiff has the RFC to perform past relevant work as a billing clerk, per DOT code 214.482-010, and that Plaintiff was not disabled.  (R. 118).

### iii.  Dr. Clinton Bush

On June 20, 2019, Plaintiff completed a Consultative Exam with Dr. Clinton Bush.  (R. 1029–33).  Plaintiff complained about right-hand problems, bilateral knee pain, generalized osteoarthritis, sleep apnea, hypertension, Sjogren's syndrome, and anxiety and depression.  (*Id.*).  She told Dr. Bush that her right hand was the biggest problem and that she was experiencing partial numbness in her hand.  (*Id.*).  Dr. Bush opined that the MRI scans of Plaintiff's knees revealed evidence of advanced medial arthritis and medial meniscal tears.  (*Id.*).  No evidence of swelling, warmth, erythema, or deformity was present in any of the examined joints.  (R. 1032).  Plaintiff was able to stand on one foot and fully squat and stoop.  (*Id.*).  All of her joints, including the joints of her right hand, were normal, with no evidence of swelling, erythema, or limited range of motion.  (*Id.*).  Plaintiff exhibited decreased sensation in the right hand, but normal sensation everywhere else.  (*Id.*).  She exhibited full motor strength in all extremities, including 5/5 grip strength

bilaterally.  (*Id.*).  She could turn a doorknob, manipulate small objects, get on and off the exam table, and out of the chair without assistance (*Id.*).

### c.   Summary of the Administrative Law Judge's Decision

After reviewing the record and conducting a hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Following a hearing in which testimony was taken and evidence presented, the ALJ issued a written decision.  As part of the analysis, the ALJ conducted the required five-step sequential evaluation.  In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 14, 2018.  (R. 44).  In step two, the ALJ found that Plaintiff had the following severe impairments: "major joints Sojourners syndrome osteoarthritis, obstructive sleep apnea (OSA), right hand pain, obesity and chronic obstructive pulmonary disease (COPD)."  (*Id.*).  The ALJ found the above medically determinable impairments to significantly limit Plaintiff's ability to perform work activities as required by SSR 85-28.

In addition to the severe impairments listed in step two, the ALJ also found evidence in the medical record of non-severe impairments that resulted in no more than a minimal effect on Plaintiff's ability to meet the basic demands of work activities.  (*Id.*).  These non-severe impairments included fibromyalgia, left-hand pain, left knee pain, and back problems.  (R. 45).

The ALJ continued on to step three, determining that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526)."  (R. 46).  In step four, the ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except never climb ropes, ladders or scaffolds; never work around hazards; frequently climbing ramps and stairs,

balancing, kneeling, crouching and crawling; and avoidance of concentrated exposure to temperature extremes, humidity and wetness." (*Id.*).

The ALJ further found that, based on the combined effects of all Plaintiff's impairments, she was limited to lifting twenty pounds occasionally and ten pounds frequently, standing six of eight hours, walking six of eight hours, sitting six of eight hours and never being exposed to ropes, ladders, scaffolds, unprotected heights, and dangerous moving machinery.

As part of the step-four analysis, the ALJ considered Plaintiff's past relevant work as a billing clerk and found that it "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. 56). At the hearing, the VE opined that a billing clerk, under DOT code 214.482-010, is sedentary and an SVP 4. (*Id.*). The ALJ did not proceed to step five. The ALJ ultimately determined that, based on the VE's testimony, Plaintiff was capable of performing her past relevant work as a billing clerk, and that Plaintiff has not been under a disability from the alleged onset date. (R. 56).

## III.   STANDARD OF REVIEW

### a.  Legal Principles

After an ALJ issues a decision and the claimant exhausts all tools of administrative review, the claimant may seek review of the decision by commencing a civil action in federal court. The court is tasked with only deciding whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Davis v. Kijakazi*, 2022 WL 1215634, at *1 (N.D. Ala. Apr. 25, 2022) (citing *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020)).

### b.  Regulatory Framework

The Social Security Administration formulated a framework of detailed regulations that are used in the SSA's review process. This framework begins by determining whether a claimant

is disabled.  A claimant must be "disabled" to be eligible for Social Security benefits.  42 U.S.C. § 1382.  The claimant must prove he or she is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

As mentioned *supra*, the Code of Federal Regulations outlines a five-step sequential evaluation process for deciding whether a claimant is disabled.  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaged in any substantial gainful activity, she will be found not disabled.

In the second step, the ALJ must then determine whether she has a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled.  20 C.F.R. § 1520(c).  If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three.  *Mabry v. Saul*, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P. App. 1.  Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the

11

claimant's residual functional capacity and (2) the claimant's ability to perform her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. §§ 1520(a)(4)(iv), 1520(f).  If the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing his past relevant work.   If the claimant can still perform his past relevant work, then she will not be found disabled.  *Id.*

In step five, the burden shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  If met, the "burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]."  *Id.*  The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work.  If the claimant can make an adjustment to other work that exists in the national economy, then she is not disabled.  If not, the claimant is considered disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

In 2017, The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

The revised regulations provide that the SSA will consider medical opinions or prior administrative medical findings using certain factors.  20 C.F.R. § 404.1520c(a).  The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the

program's policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c).  The most important of these factors are supportability and consistency.  20 C.F.R. § 404.1520c(a).  For example, the more relevant the objective medical evidence and supporting explanation provide by a medical source to support his or her medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520(c)(2); 20 C.F.R. 416.920c(c)(2).

## IV.    ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed, or that the matter should be remanded for further administrative proceedings because the ALJ (1) failed to properly analyze the physical and mental demands of Plaintiff's past work as required by Social Security Ruling ("SSR") 82-62; (2) failed to properly consider and appropriately analyze other relevant evidence; (3) the ALJ's functional assessment was not supported by substantial evidence or by either a treating and/or examining medical source ; and (4) that the ALJ rejected all treating medical source opinions without sufficient justification.

Because Plaintiff filed her claim on January 10, 2019, the revised regulations regarding the consideration of medical opinions under 20 C.F.R. § 404.1520c apply.  Although Plaintiff's

Motion for Summary Judgment did not apply the revised regulations in her analysis, this Court applies them them here.  (ECF No. 17 at 13).

### a.  ALJ's Failure to Properly Analyze Past Relevant Work Under SSR 82-62

The ALJ's finding that Plaintiff could perform her past relevant work as a billing clerk, as actually performed, was flawed.  Because the ALJ's determination denied Plaintiff's claim and because "the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits," it was essential for the ALJ to have understood and articulated the specific physical and mental demands of Plaintiff's work as a billing clerk.  *See Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).

Step four of the sequential analysis requires an ALJ to give consideration to the individual's capacity to perform past relevant work.  *Caylor v. Astrue*, No. 3:09-CV-815-J-TEM, 2010 WL 3833038, at *3 (M.D. Fla. Sept. 28, 2010); *see Cohen v. Astrue*, 258 Fed. App'x. 20, 28, 2007 WL 4437229, at *8 (7th Cir. 2007) ("[A]n ALJ cannot describe a previous job in a generic way, e.g., 'sedentary,' and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting.").

SSR 82–62 emphasizes the need for an adequate record regarding Plaintiff's past work and requires finding of facts as to: 1) the claimants RFC; 2) the physical and mental demands of the past relevant work; and 3) whether the claimants RFC would permit a return to the past relevant work.  SSR 82–62, 1982 WL 31386 (S.S.A. 1982).

Pursuant to SSR 82–62, an ALJ is required to obtain sufficient evidence to make a decision as to whether a claimant retains the RFC to perform his or her past relevant work.  *Id.*; *see Johnson v. Comm'r of Soc. Sec.*, No. 6:12-CV-123-ORL-GJK, 2013 WL 461278, at *6 (M.D. Fla. Feb. 7, 2013) (holding that a conclusory determination of a claimant's ability to perform past relevant work, without analyzing the physical and mental demands of the position, required a sentence four

remand); *see Johnson v. Astrue*, No. 09-CIV-21793, 2010 WL 1410559, at *10 (S.D. Fla. Apr. 1, 2010) (holding that the ALJ made a blanket conclusion involving the handling of medical evidence and opinions, thus, reversible error was committed and remand warranted); *see Davison v. Halter*, 171 F. Supp. 2d 1282, 1285 (S.D. Ala. 2001) (noting that SSR 82–62 requires that in finding that a claimant has the ability to perform his or her past relevant job, the decision "must contain . . . a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation.") (quoting SSR 82–62); *see also Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1346–47 (M.D. Fla. 2004) (holding that the ALJ erred by describing the plaintiff's job as "the type of work she performed in the past," thus, he failed to follow SSR 82-62 and considered the work demands of the job as it is generally performed and not as the plaintiff described it."); *see Childs v. Astrue*, Case No. 8:07–cv299–T–TBM, 2008 WL 686160 at *4 n. 1. (M.D. Fla. Mar. 10, 2008) (noting that the ALJ's decision lacked any explicit findings concerning the functional demands of any of the claimant's past work, but only had the blanket conclusion that the claimant could still do this type work and, as such, it was unclear how the ALJ arrived at this conclusion).

Plaintiff argues that the ALJ makes "[n]o attempt whatsoever . . . to identify any specific work functions and/or describe how Ms. Rodriguez's impairments might affect her performance of those tasks."  (ECF No. 17 at 7).  Plaintiff asserts that, although the VE identified the billing clerk job, the ALJ failed to analyze the actual job duties or "even identify in the decision how the job was actually performed by Ms. Rodriguez." (*Id.* at 8).  At this stage, Plaintiff argues that the ALJ's finding requires an "explicit accounting" of the evidence in the decision document; "implied findings are not sufficient."  (*Id.*).

Defendant argues that the VE accurately identified the general and actual requirements of Plaintiff's prior billing clerk job, and properly considered Plaintiff's functional limitations as to performing the billing clerk job in a hypothetical question posed by the ALJ. (R. 9–10). Defendant asserts that the VE's testimony "provided substantial evidence in support of the ALJ's finding that Plaintiff could perform her past relevant work as a billing clerk." (*Id.*). Defendant further asserts that the ALJ sufficiently explained his reasoning at step four and that he suitably cited the DOT code of the job, as testified to by the VE. Defendant argues that remanding this case would result in having the ALJ perform a "rote recitation of information," which would be a wasteful exercise. (ECF No. 18 at 11).

Here, the ALJ concluded the sequential analysis at this step without conducting an appraisal of the record and without fully evaluating the physical and mental demands of Plaintiff's work pursuant to SSR 82-62. The ALJ's decision almost entirely ignores these demands and makes only one reference to the physical and mental demands of Plaintiff's work as a billing clerk:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually performed.

(R. 56). The decision and testimony provide a hasty analysis, lacking details of Plaintiff's past relevant work and job details, including the tools and machines used, knowledge required, and other job-related details.

As Defendant notes, the DOT classification provides some generalized information as to the requirements of a billing clerk's job. (ECF No. 18 at 9). However, SSR 82-62 requires the ALJ to make "every effort . . . to secure evidence that resolves the issue as clearly and explicitly

as circumstances permit."   The ALJ here did not make every effort to provide more detailed information above the generalized description provided in the DOT classification.[4]

The ALJ's decision is devoid of factual support as to a description of Plaintiff's work. Moreover, the hearing transcript demonstrates that the ALJ failed to question Plaintiff about the specifics of her work and only asked cursory questions, eliciting few relevant details:

> ALJ: What type of work were you doing?
>
> Plaintiff: I was doing the billing of the different departments or offices of the pediatric office.

(R. 74).  As Plaintiff's counsel questioned Plaintiff as to relevant information regarding her pain and inability to ambulate, the ALJ interjected:

> ALJ: We've been going for 45 minutes. We tried calling you 10 minutes early to start early on this case. For some reason, we were unable to do so, but we have a vocational expert's testimony to take, and I have another case that I need to start in about five minutes.
>
> Attorney: Okay. I guess I'll try to do household chores and typical day…

(R. at 81).  Plaintiff's counsel then reorients her questioning.  Three questions later, the ALJ interrupts Plaintiff's counsel again:

> ALJ: Okay. We're going to -- Ms. Read?
>
> Attorney: Yes?
>
> ALJ: We need to move this. I'm getting [Instant Messages] that they are waiting for me to start another case right now. This case was scheduled for 45 minutes. That includes vocational testimony. So, I'm going to give you another minute or two, but you've got to wrap this up.

---

[4] It is unclear which DOT code actually applies to Plaintiff.  The disability determination examinations by the state agency physicians and the ALJ's decision refer to DOT code 214.482-010, which is for a Billing-Machine Operator (Clerical), also titled a Billing Clerk.  However, the VE determined the DOT code to be 214.362-042, which is for a Billing Clerk (Clerical).  Both jobs require the same strength and SVP level; however, they vary as far as their General Education Development ("GED") scale.  The Billing Machine Operator requires a reading level of 3, a math level of 3, and a language level of 3, and the Billing Clerk requires a reading level of 4, a math level of 3, and a language level of 3.  Although nearly identical, they are separate codes, thus, separate classifications.  The decision omits any mention of this discrepancy.

(R. at 82).  At this point in the testimony, Plaintiff's counsel had yet to develop the record as to Plaintiff's impairments and Plaintiff had not testified about her past relevant work.  As mentioned above, "the claimant is the primary source for vocational documentation."  SSR 82-62.  The ALJ did not adhere to SSR 82-62 by curtailing Plaintiff's testimony.

The ALJ later questioned Plaintiff and the VE to determine Plaintiff's prior work classification.  The ALJ had the opportunity to ask Plaintiff about the physical and mental demands of her work.  Instead of gathering information about the details of Plaintiff's work, the ALJ asked cursory questions about her work at the University of Miami to have the VE identify the DOT classification:

> ALJ: What did you do for the university when you were working there?
> …
> ALJ: You filed insurance claims?
> …
> ALJ: Okay. Ma'am, did you do payroll at the University of Miami?
> …
> ALJ: Did you interact with patients?

(R. 85–86). The ALJ only inquired once as to the physical requirements of Plaintiff's work:

> ALJ: Did you spent most of your day in a seated position?
>
> Plaintiff: Yes.

(R. 87).  However, the ALJ did not further develop the record on this issue, leaving much of the job demands undefined.

Defendant relies on *Lombana v. Saul* to justify the lack of discussion in the ALJ's decision regarding the physical and mental demands of plaintiff's work.  Case No. 1:19-CV-23873-KMM, 2020 WL 5633684 (S.D. Fla. Aug. 20, 2020).  This reliance is flawed.  The district court in *Lombama* affirmed the ALJ's use of conclusory language in the decision regarding Plaintiff's job designation.  However, the hearing transcript and record in *Lombana* clearly indicate that the ALJ questioned and took into consideration the physical and mental demands of the plaintiff's past

relevant work by asking if the plaintiff lifts anything for work; is tasked with putting stock away; is limited to operating a cash register and talking with people; and is able to sit and stand as needed at work.  2020 WL 5633684 (citing ECF No. 12 at 235–42).  Although not fleshed out in the written decision, the ALJ in *Lombana* developed the record as to the demands of the plaintiff's work and even inquired as to the types of sedentary work that the plaintiff's vocational skills could transfer to if the plaintiff was determined unable to perform her past relevant work.  Considering the detail in which the ALJ elicited information, *Lombana* is inapposite to the facts here.

In *Johnson v. Comm'r of Soc. Sec.*, the district court confronted a similar issue.  Case No. 6:12-CV-123-ORL-GJK, 2013 WL 461278 (M.D. Fla. Feb. 7, 2013).  In that case, the ALJ failed to comply with SSR 82-62 at step four of the analysis by only noting that the plaintiff's former job as a mortgage clerk was a sedentary position.  *Johnson*, 2013 WL 461278 at *1–2.  The ALJ in that case stated, "in comparing the [C]laimant's [RFC] with the physical . . . demands of [a mortgage clerk], the[ALJ] finds that the [C]laimant is able to perform it as actually and generally performed."  *Id.*  That case was reversed and remanded pursuant to 42 U.S.C. § 405(g).

Considering the decision and testimony presented, the ALJ failed to comply with SSR 82-62.  Nearly no evidence was mentioned in the decision describing the physical and mental demands of Plaintiff's past work.  Moreover, little evidence was gathered at the hearing.  The ALJ "failed to comply with SSR 82–62's requirement that the finding at step-four be fully developed and explained."  *Johnson*., 2013 WL 461278, at *6. Accordingly, the Court recommends this case be reversed and remanded for further analysis and consideration of Plaintiff's past relevant work.

**b.  Substantial Evidence Does Not Support the ALJ's RFC Determination**

Plaintiff argues that the ALJ's determination, that Plaintiff is able to perform work at the light level of exertion, is incorrect and further argues that the ALJ also fails to support his analysis with an appropriate medical source statement.  (ECF No. 17 at 16).

It is important to reiterate that "in reviewing the ALJ's decision, a court is not to reweigh the evidence or decide the facts anew." *Lombana v. Saul*, 2020 WL 5633684, at \*5 (citing *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)) (internal quotation marks omitted). While the Court must not reweigh the evidence, the decision must be supported by substantial evidence such that a reasonable person would accept it as adequate to support the ALJ's conclusion. *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

### i. The ALJ's Review of Medical Evidence

Plaintiff asserts that the ALJ misstates, mischaracterizes, and fails to account for important evidence. (ECF No. 17 at 8). Plaintiff contends that the ALJ's failure to present an accurate factual basis for his findings renders his decision incapable of judicial review. In response, Defendant argues that the ALJ properly considered the medical evidence and "assuming, without conceding, the ALJ's decision contains minor factual discrepancies, any such errors would be harmless because the ALJ clearly considered Plaintiff's condition as a whole and applied the correct legal standards." (ECF No. 18 at 15).

Plaintiff's complaint in this regard is substantiated by the ALJ's evaluation of Plaintiff's 2019 Positron emission tomography ("PET") scan, which the ALJ characterizes in his decision as "normal." (ECF No. 17 at 9). The PET scan report indicated FDG avid abdominopelvic, bilateral neck and right inguinal lymph nodes; bilateral axillary lymph nodes with low-level FDG uptake;

20

and a focus of increased FDG uptake in the sigmoid colon.[5]   Plaintiff argues that the ALJ's characterization of this scan as "normal" calls into question the ALJ's understanding of medical evidence.   Defendant characterizes Plaintiff's argument regarding the PET scan as "meritless." (ECF No. 18 at 15).   Defendant argues that the ALJ correctly noted some uptake in the sigmoid colon from Plaintiff's April 2017 PET scan.   (*Id.*).   Defendant claimed to have been summarizing Dr. Hoffman's findings, where Dr. Hoffman found that "[the PET scan] was entirely consistent with Plaintiff's Sjogren's syndrome, and determined that no biopsy was warranted."   (*Id.*).

As Plaintiff notes, the PET scan screens not only for cancer but inflammation, and indeed, the records here indicate that Plaintiff's scan revealed findings at least significant enough to be noted by the treating physician and, as Defendant recognizes, consistent with a syndrome that may cause joint pain, swelling, and stiffness.[6]   This is objective medical evidence that would seem to corroborate Plaintiff's reported symptoms, including painful joints and fatigue.[7]   The ALJ's summary of the scan as "normal" either replaces his expertise with that of the treating physician or at least fails to reconcile these findings with his interpretation that they are "normal."   (R. 49).

Plaintiff's challenge to the ALJ's evaluation of the medical evidence relating to her knee problems is similarly well placed.   The ALJ concluded that Plaintiff's treatment records do not support her reported walking difficulties because Dr. Hurst's physical examinations indicated Plaintiff had no musculoskeletal examination issues.   Plaintiff contends that the ALJ mischaracterizes Dr. Hurst's medical notes.   Plaintiff asserts that on December 28, 2018, Dr. Hurst's examination showed a normal musculoskeletal exam and otherwise normal findings, but

---

[5] "FDG is a glucose analogue that is actively transported across the blood-brain barrier (BBB) and phosphorylated within cells.  FDG uptake reflects the tissue glucose metabolism and is usually high in high-grade tumors and relatively low in low-grade tumors."   Neuro-Oncology,  https://www.sciencedirect.com/topics/medicine-and-dentistry/fluorodeoxyglucose (last visited June 22, 2022).

[6]  https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216  (last visited July 21, 2022).

[7] *Id.*

from a global perspective, Dr. Hurst's review of systems demonstrated arthralgias within the musculoskeletal system.   (ECF No. 17 at 10).   Plaintiff also contends that the ALJ omitted descriptions of Dr. Hurst's notes regarding Plaintiff's difficulty walking and disequilibrium in her neurologic system.   (*Id.*).   Dr. Hurst's medical records also include a copy of the 2018 MRI results demonstrating "(1) a full thickness tear of the medial meniscus, (2) near complete cartilage loss in the weight bearing areas of the knee, and (3) trochlear dysplasia (dysfunctional kneecap due to structural abnormality)."   (ECF No. 19 at 4); *see* (R. 551–52).   The record demonstrates that Plaintiff experienced pain and symptoms consistent with the MRI, such as painful gait and swelling in the right knee (R. 1205); numbness and weakness in the upper extremities (R. 1221); right knee pain and swelling (R. 1238); bilateral hand weakness (*Id.*); and various other documented symptoms of pain.

In response, Defendant argues that the ALJ properly evaluated Dr. Hurst's records.   (ECF No. 16 at 16).   Defendant asserts that the ALJ accurately recorded the information taken from Dr. Hurst's notes and that Dr. Hurst's review of symptoms "is not the same as objective findings." (*Id.* at 16).   MRI results, however, <u>are</u> objective findings and again, Plaintiff argues that the ALJ failed to accurately evaluate Plaintiff's MRI results.   The ALJ noted only that "[t]he MRI revealed mild arthritic changes of the right knee."   (R. 54–55).

Defendant contends that the ALJ discharged his duty by summarizing the right knee MRI in detail, despite the apparent discrepancy between the significant findings described in the MRI report and the ALJ's rejection of those findings as only "mild." He has not. The MRI report identifies several structural abnormalities in Plaintiff's knee, and the ALJ's interpretation of the results seems contrary to the report and offers no explanation for the apparent discrepancy.

Finally, Plaintiff argues that the ALJ makes incorrect evidentiary statements regarding Plaintiff's swelling.   (ECF No. 17 at 11).   Plaintiff cites the ALJ's decision, wherein the ALJ

asserts that the record shows no evidence of swelling or edema.[8]   However, Plaintiff argues that the actual evidence shows that Plaintiff suffers from swelling and edema.  (R. 1170, 1205, 1221, 1222, 1249, 1250, 1360, 1361).  Defendant argues that the ALJ correctly noted that Dr. Tozman noted no edema and that of the records cited by the ALJ, three of the pages all note no edema. Defendant acknowledged that Dr. Tozman observed Plaintiff to have mild edema; however, her later records showed no edema.  On one occasion, Defendant also acknowledged incorrectly citing one medical note in support of the argument that Plaintiff had no edema, which noted that Plaintiff demonstrated edema.  (ECF No. 18 at 15–16).

The ALJ cited treatment notes from a December 29, 2019 visit with Dr. Tozman, which state "no edema." (R. 1170).  However, Dr. Tozman also notes "bilateral pain and swelling in the feet."  (R. 1163).  The ALJ notes this discrepancy in separate treatment notes from Dr. Tozman. (ECF Nos. 1170, 1205, 1234).

The ALJ's findings are undermined by the same evidence on which his decision relies, without explanation for his reliance on certain findings, but not others.  This issue is exacerbated by the ALJ's unexplained characterization of Plaintiff's MRI, objective evidence of which demonstrates other symptoms that the ALJ apparently does not credit.  The ALJ is required to explain how inconsistencies were considered and resolved.  SSR 96-8p.  Because the ALJ's summary of relevant medical records contains these errors and omissions, I recommend that the decision be remanded with instructions to accurately evaluate all relevant medical records.

---

[8] Edema is defined as "a swelling of the tissues due to fluid retention."  *Romo v. Astrue*, No. EDCV 09-1356-JEM, 2010 WL 3386448, at *4 (C.D. Cal. Aug. 26, 2010).

### ii.   The ALJ Erred By Rejecting the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians, Dr. Hurst and Dr. Tozman, while exclusively relying upon the opinions of Dr. Feldman, Dr. McKenzie, and Dr. Burns, the latter of whom did not examine Plaintiff in person. Plaintiff criticizes the ALJ's analysis in this regard for failing to account for <u>all</u> the pertinent evidence, making conflicting statements about the opinions, and relying on inconsistencies in those treaters' notes that relate to minor medical issues, not the Plaintiff's significant impairments, and thus having no bearing on the persuasiveness of their opinions on those conditions that render Plaintiff disabled (ECF No. 17 at 14).   In support, Plaintiff directs the Court to the ALJ's contradictory statement regarding the June 2018 MRI discussed above.   Plaintiff also argues that Dr. Hurst and Dr. Tozman rendered "remarkably similar" functional assessments and concluded that with Plaintiff's limitations, she would not be able to perform and sustain her past relevant work.

In response, Defendant argues that the ALJ evaluated Dr. Hurst's and Dr. Tozman's opinions in accordance with the revised regulations.   The ALJ found that Dr. Tozman's opinions were unpersuasive because they were inconsistent with her treatment notes showing no reports of medication side effects or daytime sleepiness.  (*Id.* at 22).   Defendant asserts that Plaintiff reported conflicting information about her sleep to Dr. Tozman and Dr. Abreu, her sleep specialist.

Considering the "consistency" factor, the ALJ's analysis falls short.   The more consistent a medical opinion is with the evidence from other medical and non-medical sources, the more persuasive it is.   20 C.F.R. § 404.1520c(b)(2).   The ALJ's findings that Dr. Hurst's and Dr. Tozman's opinions were inconsistent with their medical records documenting Plaintiff's treatment are not supported by the record.   Plaintiff highlights the argument that ALJ fixates on examination

24

findings showing a lack of edema or swelling to show, apparently, a lack of functional significance regarding these MRI results.  However, as Plaintiff argues, a "full consideration of the medical evidence demonstrates functional limitations consistent with the MRI findings, such as painful gait (Tr. 1205), numbness, weakness, and pain (Tr. 1221), and difficulty walking and disequilibrium (Tr. 547-549)."  (ECF No. 19 at 4).  Plaintiff's arguments highlight the underlying inconsistencies in the ALJ's own RFC analysis and demonstrates "selective" and limited attention to the evidence.  An examination of the record reveals that Plaintiff's records were more consistent as to the existence and effects of Plaintiff's severe impairments than the ALJ's decision portrays.

The ALJ extensively critiques the physicians' opinions on ancillary and non-severe impairments that are not the source of Plaintiff's claim.[9]  For example, the ALJ deems both physicians' opinions unpersuasive because treatment records failed to mention complaints of side effects from medication.  As for the ALJ's focus on the inconsistencies around edema and swelling, Plaintiff accurately notes that "[n]either doctor makes edema or swelling a significant part of their findings."  (ECF No. 19 at 7).  How these issues constitute inconsistencies, undermining the doctor's medical opinion on Plaintiff's severe and limiting impairments, is not obvious, but more importantly, it is not explained by the ALJ in his decision.

The ALJ's decision to reject the testimonies of Plaintiff's treating physicians was not based on substantial evidence.  On remand, and with proper evaluation of the medical records, the ALJ may reach a different determination about the treater's opinions.

---

[9] The ALJ found Plaintiff to have the following severe impairments: major joints Sojourners syndrome, osteoarthrosis, obstructive sleep apnea (OSA), right hand pain, obesity and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c)).

## V.     CONCLUSION

Because the ALJ failed to analyze the specific requirements of Plaintiff's past relevant work under SSR 82-62, rejected the opinions of Plaintiff's treating physicians, and based his RFC determination on inconsistent information without explanation, the ALJ's conclusions were not supported by substantial evidence.

As explained in *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991), a remand may be pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  *See Gunn v. Astrue*, No. 106-CV-00205-MP-WCS, 2008 WL 216403, at *13 (N.D. Fla. Jan. 23, 2008).  "The fourth sentence of § 405(g) authorizes a court to enter 'a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.'" *Melkonyan*, 501 U.S. at 98.

Here, a sentence-four remand may be appropriate for a rehearing.  *Falcon v. Heckler*, 732 F.2d 872, 829–30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).

## VI.     RECOMMENDATION

Accordingly, the undersigned respectfully recommends that Plaintiff Maria Rodriguez's Motion (ECF No. 17) be **GRANTED** and that Defendant's Motion (ECF No. 18) be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to reanalyze steps four and five of the Social Security Administration's five-step inquiry, including reevaluating the medical evidence and inconsistencies in the evidence, and reconsidering Plaintiff's ability to return to past relevant work in compliance with SSR 82–62, obtaining the testimony of a vocational expert, if necessary.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Court Judge for the Southern District

of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

    **RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 22nd day of July, 2022.

                                                       LAUREN FLEISCHER LOUIS
                                                       UNITED STATES MAGISTRATE JUDGE